# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| *In re:* § | |
| § | |
| TED HOPKINS ROBERTS and § | |
| MARY ANN ROBERTS § | |
| § | |
| *Debtors,* § | |
| § | |
| TED HOPKINS ROBERTS and § | |
| MARY ANN ROBERTS, § | |
| § | |
| *Appellants*, § | |
| § | |
| v. § | Civil Action No. SA-07-CV-583-XR |
| § | |
| CHARLES F. MCVAY, § | |
| United States Trustee, Region 7, § | |
| § | |
| *Appellee.* § | |

## ORDER

Appellants, Ted Hopkins Roberts and Mary Ann Roberts, appeal an order of the United States Bankruptcy Court for the Western District of Texas, The Honorable Ronald B. King presiding, denying Appellants discharge from bankruptcy under 11 U.S.C. §§ 727(a)(2)–(4), and the court's concurrent order denying Appellants Amended Motion for Sanctions against the United States Trustee. For the reasons stated below, this Court AFFIRMS the bankruptcy court's decision.

### I. Factual and Procedural Background

The Appellants Ted and Mary Roberts ("Appellants") originally filed for Chapter 11 bankruptcy in October of 2004, after a multitude of financial difficulties. Later, Appellants voluntarily converted the proceedings to continue under a Chapter 7 liquidation. According to Appellants, they completed forms provided to them by their board certified bankruptcy counsel. These forms, according to Appellants, were out of date and required disclosure of partnership and

business associations for the previous *two* years, instead of the previous *six* that has been required since 2001. It is undisputed that this error resulted in two entities, The Ezekiel I investment partnership and the Roberts Foundation for Children, not being included in the Appellants' original Statement of Affairs. The appellants modified their financial statements two times and their financial schedules six times to reflect differing financial situations and discoveries of documents throughout the bankruptcy proceedings. It is also undisputed that the original financial schedule filed and signed by the appellants, along with each of the six amendments, explicitly and clearly required disclosure of all partnerships and business associations for the preceding six years.

On July 11, 2006, the United States Trustee ("UST") filed a complaint under 11 U.S.C. § 727 requesting a denial of Appellants' discharge, alleging the Appellants made multiple false oaths and statements in their bankruptcy schedules, transferred and concealed assets, and that Appellants had failed to keep complete financial records. (Compl. ¶¶ 11–37, July 11, 2006 [Bankr. Ct. Docket Entry No. 1].) Specifically, the UST alleged fourteen counts of misconduct that would support a denial of discharge. (Compl. ¶¶ 50–146).[1] On February 21, 2007, Appellants filed their Amended Motion for Sanctions against the UST alleging that the Complaint had been filed for an improper purpose, had made groundless claims, and was filed with an improper motive, specifically that the UST was specifically targeting Appellants for harsh treatment stemming from an alleged personal conflict with both the wife of Bankruptcy Judge Lief Clark and the UST. (Am. Mot. for Sanctions ¶¶ 23–64, (Bankr. Ct. Docket Entry No. 123]). Appellants requested that the bankruptcy court dismiss the

---

[1] These fourteen counts allege various violations surrounding the Ezekiel I Investment Partnership, The Roberts' Foundation for Children, Lawyer's Title Earnest Money Deposit, Martinez Earnest Money Deposit, ACIS stock owned by the Appellants, Tango Property, and a claim against Ted H. Roberts, P.C.

complaint, allow the discharge of Appellants, and to collect $50,000 from the UST in compensation for Appellants' costs of representation in the adversarial proceeding. (Am. Mot. for Sanctions ¶ 98.) After a three day bench held on April 3 through April 5, 2007, that included testimony of Appellants, the bankruptcy court denied the debtors' discharge under Section 727(a)(3–4), finding that the Appellants had committed various and several acts of material false oaths, concealed and transferred assets, and had failed to maintain financial records.

## II. Issues on Appeal

(1) Appellants question whether a bankruptcy court's denial of a debtor's discharge based upon a finding of "recklessness" when the statutory standard is "knowingly and fraudulently" is clearly erroneous.[2]

(2) Appellants question whether a bankruptcy court's denial of a discharge without specifically enumerating findings of fact or conclusions of law to support each count upon which the denial of discharge is based is clearly erroneous.[3]

---

[2] The statute states that debts will not be discharged if "the debtor knowing and fraudulently, in or in connection with the case — (A) made a false oath or account; (B) presented or used a false claim . . . ." 11 U.S.C. § 727(a)(4).

[3] The elements that must be proven by a preponderance of the evidence to sustain a denial of discharge under Section 727 are: (1) the debtors made statements under oath; (2) the statements were false; (3) the debtors knew that the statements were false; (4) the debtors made the statements with fraudulent intent; and (5) the statements related materially to the case (*i.e.*, it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence of disposition of his property"). *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 178–79 (5th Cir. 1992).

A finding of reckless indifference will satisfy the "requisite intent to deceive." *Id.* at 178; s*ee also Sholdra v. Chilmark Fin. L.L.P. (In re Sholdra)*, 249 F.3d 380, 383 (5th Cir. 2001), *cert. denied* 534 U.S. 1042 (2001) (stating that the cumulative effect of falsehoods can evidence a pattern of reckless disregard to support a finding of fraudulent intent); *Cadle Company v. Mitchell (In re Mitchell)*, 102 Fed. Appx. 860, 862 (5th Cir. 2004) ("[f]raudulent intent may be proved by showing either actual intent to deceive or a reckless indifference to the truth").

(3) Appellants question whether a bankruptcy court commits an abuse of discretion by sustaining discovery objections of privilege and undue burden when allegedly no evidence has been presented in support of these objections.

(4) Appellants question whether a bankruptcy court commits an abuse of discretion by dismissing as moot a motion to sever a pending motion for sanctions after previously granting the severance motion.

(5) Appellants question whether a bankruptcy court commits an abuse of discretion by denying a motion for sanctions without allegedly first receiving evidence.

In sum, Appellants complain of two basic categories of error: (1) clearly erroneous findings by the bankruptcy court (issues 1 and 2); and (2) abuse of discretion by the bankruptcy court (issues 3–5).

### III. Legal Analysis

**A. Standard of Review**

This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). The district court reviews the bankruptcy court's findings of fact for clear error, giving due regard to the bankruptcy judge's opportunity to judge the credibility of witnesses. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 369 (5th Cir. 2005); *Total Minatome Corp. v. Jack/Wade Drilling, Inc.*, (*In re Jack/Wade Drilling*), 258 F.3d 385, 387 (5th Cir. 2001); *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

A bankruptcy court's factual findings are clearly erroneous if, and only if on the entire evidence, the Court is left with a "definite and firm conviction that a mistake has been made." *Otto*

*Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003); *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2003); *see also In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson v. Bessener City*, 470 U.S. 564, 574 (1985); *see also In re Ramba, Inc.*, 416 F.3d at 402 (stating a "factual finding is not clearly erroneous if it is plausible in the light of the record as a whole"). The court's finding that the debtors made knowing and false statements is a question of fact. *In re Andrews*, 98 Fed. Appx. 290, 294 (5th Cir. 2004). The debtor's intent under Section 727 is also a fact question. *Id*. In addition, the court's determination of the adequacy or lack thereof of a debtor's excuse or explanations of their omissions or mistakes is a finding of fact. *First Sav. Ass'n., Inc., v. Reed* (*In re Reed*), 700 F.2d 986, 993 (5th Cir. 1983). Even more, a clearly erroneous finding is not reversible error if other sufficient evidence to support the bankruptcy court's decision exists. *See Thidodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552 (5th Cir. 1987) (reaffirming that under 11 U.S.C. § 727, an erroneous finding of fact is harmless error where ample evidence supported the finding that the debtor's acted with intent to hinder, delay, or defraud creditors).

The standard of review for complaints on discovery rulings is whether the bankruptcy court abused its discretion. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 605 (5th Cir. 2001); *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993) (reviewing, for abuse of discretion, decisions to preclude discovery before granting summary judgment); *Church of Scientology v. Cazares*, 638 F.2d 1272, 1289 (5th Cir. 1981) (stating that "the [district] court has wide discretion in determining the scope and effect of discovery" and its rulings are subject to an abuse of discretion review).

Finally, whether debtors are entitled to sanctions is a mixed question of law and fact, and is reviewed for abuse of discretion. *Merriman v. Sec. Ins. Co.*, 100 F.3d 1187, 1191 (5th Cir. 1996).

**B. Sections 727(a)(2)–(4) Dischargeability Exception**

Secion 727 of the Bankruptcy Code states in pertinent part:

> (a) The court shall grant the debtor a discharge, unless — . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated or concealed — (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition; (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; (4) the debtor knowingly and fraudulently, in connection with the case — (A) made a false oath or account; (B) presented or used a false claim . . . .

11 U.S.C. §§ 727(a)(2)–(4). A creditor (or trustee) must prove one of the discharge exceptions by a preponderance of the evidence. *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009). Even if this Court finds that the bankruptcy court was clearly erroneous on one or more of its findings, such error is harmless where ample evidence supports a finding that the debtors acted with the intent to hinder, delay, or defraud their creditors. *In re Olivier*, 819 F.2d at 552. Even one action found to be with the intent to hinder, delay, or defraud the creditors is enough to sustain the bankruptcy court's finding of a discharge exception. *See id*. The Fifth Circuit has also presented several "badges of fraud" to help determine the existence of fraud when direct evidence is lacking. *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989). They are as follows: (1) lack/inadequacy of consideration; (2) family/friendship/close associate relationship between the parties; (3) retention of possession/benefit/use of the property in question; (4) financial condition of party sought to be

discharged with both before and after the transaction in question; (5) existence or cumulative effect of the pattern/series of transactions/course of conduct after financial problems arose; and (6) general chronology of the events/transactions under inquiry. *Id*. (citing *In re Schmit*, 71 B.R. 587, 590 (Bankr. D. Minn. 1987)). The bankruptcy court is to weigh these six factors when determining the dischargeability of a debtor, and this Court is to re-examine these factors when determining the appropriateness of the bankruptcy court's findings.

Although this Court is only required to uphold one finding of fraudulent conduct alleged against the debtors in order to affirm the decision of the bankruptcy court, in the interest of fairness, it is prudent to examine each of the five alleged acts and determine whether or not each finding was clearly erroneous.

**1. Ezekiel I and Roberts Foundation for Children**

It is undisputed that Appellants failed to include two corporate entities (of which both were general partners) on their initial Statements of Financial Affairs filed with the UST. (Pl.'s ex. 3). These two entities were known as the Ezekiel I partnership, and the Roberts Foundation for Children (RFC). Ezekiel I was formed on June 15, 2000 by Appellant Ted Roberts, and both he and Mary Roberts were general partners in Ezekiel I at least until the end of 2002. (*See* Appellants' Br. 8, July 30, 2007). The Articles of Incorporation for the Roberts Foundation for Children were filed with the Texas Secretary of State on December 28, 2001, and named both Appellants as directors. (Trial Tr. vol. 2, 371, April 4, 2007). It was even found by a Bexar County criminal jury that Ted Roberts had deposited monies received in connection with criminal activities into the RFC sometime in 2002, and RFC had loaned at least $69,000 to Appellant's Professional Corporation to cover overhead expenses. (*See State v. Ted H. Roberts*, No. 2006-CR-6404B (226th Dist. Ct., Bexar County, Tex.

2006); Pl.'s ex. 82 Charge of Court and Jury Verdict). RFC filed articles of dissolution with the Texas Secretary of State on January 22, 2005, less than ten months before Appellants first filed for bankruptcy, and were signed by Mary Roberts as Chairman of the Board of Directors. (Pl.'s ex. 63).

Appellants argued before the bankruptcy court, and argue now, that they had relied upon forms given to them by their board certified bankruptcy counsel which asked for all information regarding any past businesses the Appellants had been a part of for the previous two years as required by the law before 2001, instead of the previous six years as required for all filings after 2001, that the partnerships were essentially valueless and therefore their exclusion did not prejudice the UST or any other creditor, and Appellants' belief that neither were either a "business," nor had the partnerships been active within the two years prior to bankruptcy. (Appellants' Br. 4). It must be noted, however, that Question 18 of the Statement of Financial Affairs, signed under penalty of perjury by both Appellants, clearly and explicitly requires disclosure of information concerning business in which they were involved during the six years prior to filing for bankruptcy.[4] Testimony of Appellants at trial evidenced that Ezekiel I was part of the focus of litigation they were involved in during 2001 and 2002. (Trial Tr. vol. 2, 411–16). Appellants claim that they did not read Question 18 of the Statement of Financial Affairs, but instead relied only upon the form given to them by their bankruptcy counsel. (Appellants' Br. 16).

A debtor has a duty to carefully examine the schedules and to be very sure that all

---

[4] Question number eighteen of the Statement of Financial Affairs requires debtors to list "the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner or managing executive of a corporation, partnership, sole proprietorship or was a self employed individual within the six years immediately preceding the commencement of the case, or in which the debtor owned five percent or more of the voting or equity securities within the six years immediately preceding the commencement of the case." (Pl.'s ex. 3).

information listed is completely correct. *See Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593–94 (Bankr. N.D. Tex. 1991) ("A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects."). Appellants' argument is tantamount to stating that they certified the answer to be true as they perceived it to be from an unofficial document, but admittedly not true to the question actually asked in the Statement. The Statement of Financial Affairs actually signed by both Appellants under the penalty of perjury was most clear; Appellants were required to list all businesses of which they held a significant role for the preceding six years. As seen in *Dreyer*, Appellants had a "paramount duty" to ensure that all answers on the Statement were completely true "in all respects." *In re Dreyer*, 127 B.R. at 593–94. It should also again be noted that both Appellants were licensed attorneys for many years when these Statements were signed and filed.

Further, the argument that Ezekiel I and RFC were dormant and of no value does not pass muster, as the Fifth Circuit has stated that contention as "meritless." *In re Beaubouef*, 966 F.2d at 178–79 (stating that the debtor's explanation for failure to list his ownership in a business was due to the fact that the "company did no business, had no customers . . . is meritless"). The basic principle behind the Statement of Financial Affairs is to give both the UST and any creditors an accurate portrait of the debtor's financial situation, and exclusions based upon the debtor's belief they have no value do not help fulfill that purpose. Finally, the Fifth Circuit has also concluded that, as here, addition of items to the Schedules only upon questioning by creditors or the UST can create a negative implication which the bankruptcy court may infer fraudulent intent. *Sholdra v. Childmark Fin. L.L.P. (In re Sholdra)*, 249 F.3d 380, 382–83 (5th Cir. 2001). The court went even further to hold that a debtor's inexperience or reliance upon incorrect advice or information from one's

counsel, even if true, would not present a valid defense to a denial of discharge. *Id*. at 383.

Based upon the analysis above, the bankruptcy court was not clearly erroneous in it's finding that the Appellants had committed fraudulent acts sufficient to sustain a denial of discharge ruling under 11 U.S.C. § 727(a)(4), and the therefore the finding of the bankruptcy court is AFFIRMED.

### 2. Lawyer's Title Deposit/Broadway Bank Account

It is undisputed that the Appellants received a one-thousand dollar check dated August 26, 2004, as a refund from Lawyer's Title and that it was deposited shortly thereafter in an account at Broadway Bank. Appellants claim that their omission of the check was appropriate, as the funds from the check had been expended before the bankruptcy filing on October 14, 2004. (Appellants' Br. 24). The UST does not make an argument as to why disclosure of the deposit was necessary on the Schedules or Statements of Affairs. Even if the bankruptcy court could be found clearly erroneous in basing a discharge exception upon this deposit, it would be harmless error, as it has already been established that the bankruptcy court was not clearly erroneous in denying a bankruptcy discharge under Section 727(a)(4). *See In re Oliver*, 819 F.2d at 552 (stating that a clearly erroneous finding is not reversible error if other sufficient evidence to support the bankruptcy court's decision exists). One valid purpose of the admission of the deposit, however is to further evidence Appellants' personal ownership in the account where it was deposited, discussed below.

As to the Broadway Bank account, Appellants admit in their brief that "[it is uncontroverted that the account existed at the time the Roberts filed their bankruptcy petition . . . and was property of the estate . . . but was not disclosed." (Appellants' Br. 25). Appellants further claim that they knew they were signatories on the account, but that they did not know they owned any funds in the account. (*Id*. at 26). The evidence presented at trial, however, tended to show that Appellants had

exercised continuing ownership and control over the account, such as writing checks from the account to pay for the same types of personal expenses as they did from their debtor in possession accounts during the pendency of the bankruptcy. (Def.s' ex. D-1/D-5; Pl.'s exs. 30–38). Appellant Ted Roberts testified at trial that the account was property of the debtors' estate on the date of the bankruptcy filing, even though it had been omitted from the Schedules and Statements of Affairs. (Trial Tr. vol. 2, 180:21–25, 336:11–21).

Furthermore, Appellants did not disclose accurate records of the account until compelled by the bankruptcy court to do so during the adversary proceedings brought forth by the UST in an attempt to deny Appellants a bankruptcy discharge, during November of 2006. Appellants argued that as they did not own the account, they were unable to provide such records. The bank's representative, however, testified that as customers and account holders, Appellants could obtain the records from Broadway Bank at any time. (Trial Tr. vol. 1, 35:1–4, April 3, 2007). Bank accounts are essential in determining the financial status of a debtor during bankruptcy. *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 567 (5th Cir. 2005) ("Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances." (quoting *In re Baldridge*, 256 B.R. 284, 290 (Bankr. E.D. Ark. 2000))); *Cadle Co. v. Guenther (In re Guenther)*, 333 B.R. 759, 768 (Bankr. N.D. Tex 2005) ("The status of bank accounts . . . are the basic matters about which creditors and the Court are most concerned).

Appellants failed to disclose the existence of the Broadway Bank account, which they continued to utilize to pay personal expenses, for more than two years during the pendency of their bankruptcy. The bankruptcy court was not clearly erroneous in determining that the exclusion of the

Broadway Bank account was a false oath made with fraudulent intent, and therefore denied Appellants discharge under 11 U.S.C. § 727(a)(4), as well as failing to keep or preserve any records that was justified under the circumstances under 11 U.S.C. § 727(a)(3). The finding of the bankruptcy court is AFFIRMED.

### 3. $5,000 Deposit to the Martinezes

On or about August 3, 2004, Appellants entered into an earnest money contract with Ernest and Mary Ann Martinez ("the Martinezes") in order to lease, with an option to purchase, a house located at 9514 Burwick, San Antonio, Texas ("Burwick Property"). (Pl.'s ex. 70). On August 3, 2004, the Martinezes were given a check for five-thousand dollars to hold as a deposit pursuant to the contract. (Trial Tr. vol. 3, 584:3–7, April 5, 2007). The purchase agreement contained language stating that if there were no closing on the property, the five-thousand dollars would be forfeited to the Martinezes. At trial, Mr. Roberts testified that the original purchase price for the house had been set at $165,000, and that Appellants had agreed to raise that price to $170,000, pay five thousand dollars up front, make lease payments for one year, and then close on the property. (Trial Tr. vol. 3, 545–46. 552–53, 572–73). Due to the bankruptcy, Appellants did not complete the contract. Instead, on or about June 1, 2005, Rev. and Mrs. Schorlemer, parents of Mary Roberts, purchased the Burwick Property. (Trial Tr. vol. 3, 587:21–24). Appellants describe this event in their brief as follows:

> A review of the closing statement between the Martinezes and the Schorlemers . . . shows what appears to be the same transaction as between the Martinezes and the Roberts — the price was $170,000 and there would be a credit of $5000, which is the $5000 the Martinezes had already received. So, effectively, the Schorlemers were buying the property for $165,000. In reality, that was the asking price before the Roberts entered into the lease purchase agreement.

(Appellants' Br. 29). Obviously, Appellants admit that the Shorlemers received a five-thousand dollar credit upon purchasing the house, and that those funds were the same the Martinezes had received from the Roberts. Appellants continued to reside at the Burwick Property at least until the filing of this appeal.

Again, the Fifth Circuit has provided a list of factors for the bankruptcy court to consider when determining whether fraud has occurred when no direct evidence has been presented.[5] This list is neither exclusive, nor must all factors be accounted for in order for the bankruptcy court to properly find fraudulent conduct on behalf of Appellants. As the Schorlemers were parents of one of the Appellants, there is a family relationship between the parties in line with the second factor in the Fifth Circuit's list. Also, the Roberts continued to live in the property and retained the benefits and use of the property in question in line with the third factor. As the five thousand dollars would be available to help satisfy creditors of Appellants if the transfer were avoided, it plays heavily on the fourth factor, the financial condition of the parties before and after the transaction was made. Finally, both the general chronology factor (all of these events occurring during the pendency of Appellants' bankruptcy) and the other issues with Appellants' Schedules and Statements of Affairs (the fifth factor); combined with the bankruptcy judge's duty during a bench trial to evaluate the credibility of the witnesses (in this case Appellants and the UST), the bankruptcy court was not clearly erroneous in its finding that the exclusion of the Martinez Deposit was a material false oath

---

[5] *See supra* Part III.B. Again, they are as follows: (1) lack/inadequacy of consideration; (2) family/friendship/close associate relationship between the parties; (3) retention of possession/benefit/use of the property in question; (4) financial condition of party sought to be charged with both before and after the transaction in question; (5) existence or cumulative effect of the pattern/series of transactions/course of conduct after financial problems arose; and (6) general chronology of the events/transactions under inquiry. *In re Chastant*, 873 F.2d at 90.

made with fraudulent intent by Appellants. Therefore the bankruptcy court's finding is AFFIRMED.

### 4. The ACIS Stock Owned by Appellants

It is undisputed that the Roberts owned about four-thousand five hundred shares of a privately owned company named ACIS at the time of filing for bankruptcy, and that these shares were stored in an envelope in a safe deposit box rented by Appellants. The existence of this stock was not reported on the Schedules or in response to Question 12 of the Statement of Financial Affairs. There was testimony presented at trial that Appellants had remembered the existence of this stock without examining the contents of the safe deposit box when they listed the stock on a Financial Statement which Appellants prepared and signed for the Internal Revenue Service in 2003, a year before Appellants filed for bankruptcy. (Trial Tr. vol. 1, 225:9–18, 228:6–16). Appellants argue that the safe deposit box was not examined before the filing of the initial Schedules and Statement of Affairs, but were added soon thereafter when Appellants were required to inventory the safe deposit box by the UST. (Appellants' Br. 10; Appellee's Br. 35, Aug. 14, 2007). As stated earlier, debtors have a duty to examine their estate and to completely and truthfully list all of their assets. *In re Dreyer,* 127 B.R. at 594. It is hard to imagine that Appellants would think the contents of a safe deposit box, that Appellants do not claim to have forgotten about, would not be necessary to inventory and accurately list its contents in the Schedules and Statements of Affairs. This failure to inventory known assets could have along with the other issues discussed above and below been interpreted by the fact finder as evidence of a "pattern of disregard for the truth that supports fraudulent intent." *Dupre v. Schott (In re Dupre)*, 145 Fed. Appx. 855, 865 (5th Cir. 2005); *see also Bullough v. Bullough (In re Bullough)*, 385 B.R. 261, 285–86 (Bankr. N.D. Tex. 2007) ("At some point errors and omissions in schedules and SOFAs leave the realm of honest mistakes and enter the

realm of purposeful deceit, or at the very least, reckless indifference to the truth."). The bankruptcy court was therefore not clearly erroneous in its determination that Appellants had made a material false oath based on fraudulent intent under 11 U.S.C. § 727(a)(4). The finding of the bankruptcy court is AFFIRMED.

### 5. Appellants' Claim Against Ted H. Roberts, P.C.

It is clear that the Appellants have a claim against the Ted H. Robert, P.C. (The P.C.) in the amount of $35,625. It is also clear that the P.C. has a claim against Appellants in at least the amount of $154,000. While the P.C.'s claim was listed in the Schedules and Statement of Affairs, Appellants' claim against the P.C. was not. Appellants argue that due to the significantly larger claim against them by the P.C., any claim they have against the P.C. would be without value to any creditor, as it would be set-off against the claim held by the P.C. for monies loaned. (Appellants' Br. 32–34). The question of what is or is not of value to a creditor is not for a debtor to decide. *Gartner v. Gartner (In re Gartner)*, 326 B.R. 357, 372 (Bankr. S.D. Tex. 2007) ("Creditors are entitled to judge for themselves what will benefit, and what will prejudice them." (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617 (5th Cir. 1984))). Just as stated in *Gartner*, Appellants' assertion that the claim against the P.C. was omitted because it had no value is "irrelevant and without merit." *Id*.

Again, taken in light of all the evidence provided at trial, the finder of fact was well within his discretion to disbelieve and discount Appellants' argument that the claim was properly omitted because it would be valueless or detrimental to any creditor. As such, the bankruptcy court was not clearly erroneous when it found that this omission was a material false oath with at least the reckless indifference to the truth as required under 11 U.S.C. § 727(a)(4). The finding of the bankruptcy

court is AFFIRMED.

## C. Denial of the Motion for Sanctions and Procedural Rulings on the Motion to Sever

Appellants allege that the bankruptcy court abused its discretion by denying Appellants' Amended Motion for Sanctions against the UST because it did so without first receiving any evidence, refused to allow any discovery on the matter, and summarily denied their motion for sanctions after granting the UST's motion to sever the matter from the Adversary Proceedings. (Appellants' Br. 39–41). Examinations of both the docket for the Adversarial Proceeding and the trial transcript show that Appellants presented their own testimony at trial and in multiple hearings prior to trial as to why they were entitled to sanctions against the UST. (*See* Bankr. Ct. Docket Entry Nos. 11, 72, 123; Tr. 9–19, 34, 63–70, 73, 88–90; Trial Tr. vol. 3, 710–11, 713–14). The bankruptcy court also scheduled hearings on Appellants' motion for sanctions on both November 15, 2007, and January 24, 2007. (*See* Bankr. Ct. Docket Entry Nos. 25, 26, 27). The Appellants themselves asked for and were granted a continuance of these hearings from January 24, 2007, until April 3, 2007. The Appellants did make discovery requests of the UST, and the UST timely responded with denials and his objections to certain requests, which were sustained by the bankruptcy court and will be discussed below. Appellants asserted many alleged grounds to support the proposition that the UST had filed the Adversary Proceeding for an improper purpose, specifically due to the alleged "vendetta" against Appellants held by the wife of another United States Bankruptcy Judge. The UST denied any involvement by Judge Clark or his wife and denied that any ex parte communications took place between the UST and Judge King (who presided over the Adversary Proceeding and bankruptcy). Moreover, Appellants agreed to the UST's motion to sever the Motion for Sanctions from the Adversary Proceeding. Thus, when the bankruptcy court sustained several, but not all, of

the UST's allegations in his Complaint to Deny Discharge, it was not an abuse of discretion for the bankruptcy court to find that the UST had not in fact pursued the Complaint for an improper purpose or without a reasonable inquiry into the facts. The Fifth Circuit has held that the filing of a complaint grounded in fact and allowed by existing law cannot, as a matter of law, constitute harassment warranting Rule 11 sanctions, whatever the subjective intent of the trustee may have been. *See Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313, 320 (5th Cir. 1989), *cert. denied* 496 U.S. 935 (1990).

**D. Sustained Objections to Discovery Requests Based Upon Privilege and Undue Burden**

Appellants allege that the bankruptcy court abused its discretion concerning the denial of its discovery requests primarily because they allege it did so without first receiving evidence. (Appellants' Br. 44–45). Even if the bankruptcy court erred in restricting or allowing discovery, in order for the errors to be reversible error, they must have resulted in "substantial prejudice" to a party's case. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994). Further, the court can first decide whether or not an asserted privilege applies and rule on an objection before either party must include a document in a privilege log. *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). As Appellants made fifty-five requests for discovery based upon the issue of sanctions, and the Trustee timely replied with responses to the written discovery requests, access to documents in the UST's possession, and an opportunity to depose the UST's designated representative, Appellants were not substantially prejudiced by any possible errors in discovery. Furthermore, the Appellants were unable to depose the UST's designated representative because they failed to do so within the deadline ordered by the bankruptcy court. (Adv. Doc. Nos. 58). This is a proper enforcement by the bankruptcy court of its

own scheduling order, and not an abuse of discretion. The bankruptcy court's rulings do not meet the standard for reversible error; therefore, the bankruptcy court's rulings are AFFIRMED.

## IV. Conclusion

After reviewing the record, briefs from both parties, and all other exhibits presented, the Court AFFIRMS the Bankruptcy Court's order denying Appellants discharge from bankruptcy under 11 U.S.C. § 727 and the court's concurrent order denying Appellants Amended Motion for Sanctions against the United States Trustee.

It is so ORDERED.

SIGNED this 25th day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE